**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ALLEN GROUP (FUJIAN) CO., LTD., a company organized under the law of the People's Republic of China, | |
| Plaintiff, | Civil Action No. 10-cv-3422 |
| v. | |
| NU-DELL MANUFACTURING COMPANY, INC., an Illinois corporation, and DAVID M. BLOCK, | |
| Defendants. | |

## PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND MONEY DAMAGES

Plaintiff Allen Group (Fujian) Co., Ltd. ("Allen Group"), by its undersigned attorneys, alleges as follows against defendants Nu-Dell Manufacturing Company, Inc. ("Nu-Dell") and David Block, Nu-Dell's President and CEO:

## PARTIES

1.      Plaintiff Allen Group is a Chinese company that manufactures outdoor fiberglass products such as planters and fountains, among other items. Allen Group's products are sold in various "big box" retail stores across the country, including but not limited to Home Depot, Lowes, and Menards. Historically, Allen Group relied on vendors to both get its products to customers, and to send payment to Allen Group for its products sold to customers. These vendor-managed inventory systems provide various efficiencies for big box retailers, but they place manufacturers of products sold by the retailers in a vulnerable position to the vendor. Therefore, Allen Group reposed a great deal of trust in its vendors to fairly and honestly deal with Allen Group because Allen Group relied on those vendors to sell Allen Group's products to

these large customers, and then to remit payment to Allen Group for these sales. Nu-Dell was

one such vendor. Nu-Dell's material breaches of its fiduciary and other duties to Allen Group

are what this lawsuit is about.

2.      Defendant Nu-Dell is incorporated in Illinois, and has its principal place of

business in Des Plains, Illinois. Nu-Dell was a vendor for Allen Group. In this role Nu Dell

would obtain a purchase order from a retail customer for fiberglass products. Nu Dell would

send its own purchase order to Allen Group for the products requested by the retail customer.

Allen Group filled the Nu Dell purchase order and shipped the requested products to Nu Dell on

account to various locations within the United States, as reflected in invoices that Allen Group

faxed to Nu Dell upon shipment. Nu Dell would then deliver the Allen Group product to the

retail customer with an invoice from Nu Dell. Nu-Dell issued its own invoice to the customer

because Nu-Dell negotiated a profit margin for itself with the retail customer. When the

customer paid Nu-Dell's invoice, Nu-Dell would deduct its percentage fee, and remit the

remaining portion of the customer's payment to satisfy Allen Group's invoice to Nu Dell.

Through various unlawful misrepresentations and breaches of fiduciary and contractual duties,

Nu Dell has unlawfully converted over $1.5 million due and owing to Allen Group. Upon

information and belief, Nu-Dell has other unpaid creditors and is severely undercapitalized.

3.      Defendant David Block resides in Chicago, Illinois. Mr. Block is the

President and CEO of Nu-Dell. Mr. Block also owns or has interests in other corporations and

companies that operate from the same street address as Nu-Dell, including but not limited to

Stempel Products, Inc., f/k/a Spiold, Inc., Block Group, LLC, and ST Creations, LLC. Desperate

to keep capital flowing into Nu-Dell from the sale of Allen Group products to retail customers,

Mr. Block has made various fraudulent and negligent misrepresentations to Allen Group about

Nu-Dell's financial health and Nu-Dell's ability to perform vendor and sales representative services for Allen Group, as well as Nu-Dell's ability to pay Allen Group for the sale of its products. Mr. Block made similar misrepresentations to Allen Group's current and prospective retail customers. In reliance on Mr. Block's representations about Nu Dell's capitalization and its ability to perform and pay Allen Group, Allen Group continued to fill Nu Dell purchase orders. However, Mr. Block's promises were illusory, and neither he nor Nu-Dell have paid any of the money owed to Allen Group. Based on Mr. Block's misrepresentations, Nu-Dell, Mr. Block, and perhaps Mr. Block's conglomerate of companies, have converted and misappropriated over $1.5 million from Allen Group. Moreover, Mr. Block's misstatements to current and prospective Allen Group retail customers about Nu-Dell's ability to perform, and its relationship with Allen Group, threaten to irreparably harm Allen Group's present and prospective economic interests.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 USC 1332(a)(2), as this action is between a citizen of a foreign state and citizens of Illinois, and the amount in controversy exceeds the sum value of $75,000, exclusive of costs and interest.

5.      Defendants are subject to personal jurisdiction in this judicial district, and transact business in this judicial district.

6.      Venue is proper in this judicial district pursuant to 28 USC 1391(a).

## BACKGROUND

**Allen Group is Introduced to Nu Dell in 2006
And the Parties Begin a Commercial Relationship**

7.     Allen Group was introduced to Nu Dell in 2006.  Staring in the Summer of 2006, Nu-Dell handled sales of Allen Group products to retail customers.  Nu Dell also placed its own warehouse orders with Allen Group.

8.     The commercial relationship between Allen Group and Nu Dell for sales of Allen Group products to retail customers worked as follows:

a) Nu Dell obtains a purchase order from a big box retailer like Lowes for an order of fiberglass planters;

b) Nu Dell negotiates a sale price with the retail customer, and then Nu Dell issues its own purchase order to Allen Group for the fiberglass planters requested by the retail customer;

c) Allen Group fills Nu-Dell's purchase order and ships the fiberglass planters to Nu Dell at a location in the United States as directed by Nu-Dell;

d) Upon shipment of the planters, Allen Group sends a packing list, a bill of lading, and an invoice for payment to Nu Dell;

e) Nu Dell then delivers the Allen Group products to the retail customer with a Nu Dell invoice for payment at the price Nu Dell negotiated with the retail customer;

f) the retail customer pays Nu-Dell's invoice and remits payment to Nu-Dell;

g) Nu-Dell pays Allen Group on Allen Group's invoice to Nu Dell.

9.     For some retail customers, such as Home Depot, Lowes, and Menards, Nu Dell would sub-contract with Marshall Associates ("Marshall"), another vendor, and pay Marshall a commission for facilitating the sale of Allen Group products to the retail customer. Marshall's corporate headquarters are in downtown Chicago. Marshall is a sales and merchandising company that specializes in selling consumer products to leading retailers across the country.

**Starting in 2009, Nu Dell Incurs Substantial Financial Trouble and Begins Weaving Together a Scheme of Misrepresentations and Omissions With the Purpose and Effect of Stringing Allen Group Along in Order to Continue Receiving Allen Group Products to Sell to Customers Without Paying Allen Group — Allen Group Gets Burned**

10.    Starting in March 2009, Nu Dell began missing payments to Allen Group for products Allen Group shipped to Nu Dell. The retail customers were paying Nu Dell, but Nu Dell was not paying Allen Group. As 2009 wore on, Nu Dell continued to miss payments, but kept promising Allen Group that Nu Dell would satisfy its payment obligations. What has Nu Dell done with the money paid to Nu Dell by the retail customers for Allen Group products? Is Mr. Block using the customer payments that belong to Allen Group to fund projects or liabilities for his other companies? For himself?

11.    In the middle of 2009, Nu Dell owed Allen Group over $1 million. Nu Dell's non payment to Allen Group was hindering Allen Group's cash flow and business, and Mr. Block knew that. Mr. Block and Nu Dell acknowledged their significant debt to Allen Group, but continually made express and bold promises that if Allen Group just gave them some more time, and incurred some more debt from Nu Dell, that Nu Dell would be able to satisfy its obligations. Based on Mr. Block's representations, Allen Group agreed to work with Nu Dell to help Nu Dell satisfy its financial obligations to Allen Group.

12.     In late summer of 2009, the parties proposed that Allen Group purchase Nu Dell's assets.  Nu Dell admitted its debt to Allen Group.  Allen Group agreed to deduct the purchase price for Nu Dell's assets from the substantial amount of money owed by Nu Dell.  Nu Dell was required to perform several conditions before the agreement would close, including but not limited to delivering the first $50,000 increment of money owed to Allen Group.

13.     Despite making many material promises to Allen Group in the proposed agreement, Nu Dell failed to perform the material conditions precedent to the agreement, not the least of which was the first $50,000 payment of the substantial money owed by Nu Dell.  So the agreement never closed nor became effective.  Despite Nu Dell's failed promises, Mr. Block kept pleading with Allen Group to let Nu Dell have another chance to satisfy its financial obligations to Allen Group.

14.     In October 2009, Mr. Block began making desperate promises to pay Allen Group in order to keep Allen Group's business.  As it turned out, Mr. Block's promises were empty, and Mr. Block knew it at the time he made them.  For example, Mr. Block promised Allen Group that he would obtain a $100,000 loan from his bank to assist Allen Group in filling an order to Lowes.  Block then promised to pay 70% of Allen Group's sale price when Allen Group shipped the products to Nu Dell, and the balance when Lowes remitted payment to Nu Dell.  But upon information and belief, Nu Dell's other creditors had liens on Nu Dell's bank accounts and were taking the payments from the retail customers before Nu Dell could pay Allen Group.  So not only should Mr. Block have known the bank would not lend him additional funds, but that any money sent by retail customers to Nu Dell's bank accounts would be used to pay other creditors and not Allen Group.  Mr. Block refused to provide Allen Group with a contact person at the bank to confirm Mr. Block's representations about his ability to obtain a loan.

15.     Of course Mr. Block's promises were false, and he never obtained a loan from the bank.  Unfortunately, Allen Group relied on Mr. Block's representations, and it was costing Allen Group significant money because Allen Group was subsidizing Nu Dell's payment failures by continuing to make and ship products without payment.

16.     But Allen Group was still trying to work with Mr. Block and Nu Dell in order to close orders for Menards and Lowes.  Mr. Block discussed various terms with Allen Group for these orders, including a deposit amount for Allen Group to begin production of products, 70% of the purchase price due when Allen Group shipped the products, and the balance due one month after shipment by Allen Group.  Despite knowing the financial pressure Nu Dell's failures were putting on Allen Group, Mr. Block was not responsive and went weeks without responding to Allen Group's proposals to salvage the orders for these important retail customers.  For example, Mr. Block sent emails to Allen Group on October 8 and 9, 2009, making some of the false promises discussed above.  Allen Group responded with five emails discussing terms from October 9 through October 30 with no response from Mr. Block or Nu Dell.

17.     When Mr. Block finally responded on October 31, he made even bolder promises to Allen Group about Nu Dell's ability to pay 70% of the order amounts on the day of shipment: "We KNOW that we'll be able to do better than 70% on the day of shipment that we promised.  We just don't know how much better yet --- we're working on it.  But it WILL be better than that."  Mr. Block continued with additional bold promises that same day: "We are certain, **beyond a doubt**, that we are able to wire you 70% of billings on the day that goods are shipped in Nu Dell's name.  For sure."

18.     Relying on Mr. Block's systematic, express, and bold promises, Allen Group agreed to make and ship additional product to Nu Dell for sales to Lowes and Menards starting in December of 2009.  Nu Dell baited Allen Group by paying 75% of a few invoices in January 2010, but then Nu Dell quickly made the switch back to its unlawful conduct and stopped paying anything after January.  Nu Dell continued to receive Allen Group products through April 2010 without paying Allen Group.

19.     In February 2010, Mr. Block and Nu Dell made more promises.   They promised that they could start paying 75% of the purchase price again in early March.  In addition, Mr. Block promised that Nu Dell would pay Allen Group to produce a March 2010 order from Menards.  Relying on Mr. Block's promises, Allen Group started production on the Menards order.  Like they did in September 2009, Nu Dell and Mr. Block again baited Allen Group with promises of installment payments over time to pay down Nu Dell's debt, starting in March 2010.  Consistent with Nu Dell's scheme, March came and went with no payment from Nu Dell on either the Menards order or the $1.5 million debt.  The promises of Nu Dell and Mr. Block once again were empty.  Their scheme was working.  Allen Group's various requests for payment after Nu Dell missed its payment deadlines (just like it did in 2009) were ignored until Mr. Block responded with yet more excuses for his and Nu Dell's failures to remedy debts to Allen Group that had existed for over a year.

20.     The scheme by Nu Dell and Mr. Block to induce Allen Group to subsidize Nu Dell's debt worked. Not only that, Mr. Block was successful in his scheme to induce Allen Group to continue shipping goods to Nu Dell so Nu Dell could sell them to customers, obtain payments, and then renege on its many promises to pay Allen Group for the products sold.

**In 2010 Nu Dell Loses its Sales Force and the Ability to Sell Products
to Retail Customers, and Mr. Block Changes Tactics from False
Promises to Commercial and Legal Threats to Allen Group**

21.     Starting in early 2010, in addition to its dire financial situation, Nu Dell

lost its key sales personnel that handled the Allen Group orders with various retail customers.

Given the importance of the personal relationship between the individual salesperson and the

retail customer buyer, Nu Dell was unable to effectively perform sales functions for Allen

Group.

22.     In April 2010, with Nu Dell owing a substantial amount of money to Allen

Group and having lost its critical sales force, Allen Group demanded that Nu Dell begin paying

down the debt because it was and had been adversely affecting Allen Group's cash flow.

Consistent with its conduct over the previous year, Nu Dell failed Allen Group.

23.     Nu Dell and Mr. Block responded by engaging a lawyer and threatening to

sue Allen Group for non payment of commissions, in the face of Nu Dell's substantial financial

debt to Allen Group.  Like its promises, Nu Dell's threats are empty, and to date Nu Dell has not

filed a lawsuit.

24.     Mr. Block then turned to threatening Allen Group's business.  On May 19,

2010, Mr. Block sent correspondence to counsel for Allen Group enclosing a letter Mr. Block

said he had sent to all of Nu Dell's customers and suppliers.  Mr. Block also said he would meet

with Allen Group's customers "face-to-face."  Mr. Block's letter to Allen Group's customers and

prospective customers was materially misleading and contained various false statements.

25.     For example, Mr. Block said that "the future of [Nu-Dell's] relationship

[with customers] is on solid ground."  But Nu Dell had significant outstanding debts due and

owing to Allen Group and other creditors which prevented Nu Dell from processing payments

due and owing to Allen Group and other creditors and customers. Moreover, Nu Dell lacked the capital and personnel to adequately perform for Allen Group's customers and prospective customers. Mr. Block also marketed to customers and prospective customers the "Nu Dell method of doing business." But Nu Dell's course of conduct with Allen Group revealed methods of doing business that are materially misleading.

### Nu Dell and Block Threaten to Irreparably Harm Allen Group With Their Unlawful Conduct and Misappropriation of Allen Group Funds and Assets

26.     Nu Dell and Mr. Block converted over $1.5 million from Allen Group through a scheme of material misrepresentations and omissions. Nu Dell has neither the capital nor the personnel to perform a sales function at a high level. Defendants' conduct has damaged Allen Group's cash flow. Now Mr. Block and Nu Dell are threatening to interfere with Allen Group's current and prospective customers by making false and misleading statements about Nu Dell's abilities and its business.

27.     Nu Dell and Mr. Block have established that they will do anything to try and keep customers paying Nu Dell, regardless of the veracity of their promises or their ability to perform them. Defendants are threatening to interfere with Allen Group's customers and prospective customers, which may hinder or prevent Allen Group's ability to continue selling products to these valuable customers.

28.     Allen Group has no adequate remedy at law for defendants' unlawful conduct because Nu Dell appears to be insolvent and thus may not be able to repay Allen Group for its lost cash flow, and now defendants are threatening to interfere with Allen Group's ability to sell products to retail customers and get paid for it — defendants are threatening to destroy Allen Group's fiberglass sales to its retail customers, which are significant.

29.     The Court should enjoin Mr. Block and Nu Dell from contacting or meeting with any retail customers or prospective customers of Allen Group.  Nu Dell has neither the capital nor the personnel to conduct business with Allen Group's customers and prospective customers.  So the only reason for Nu Dell or Mr. Block to meet with these customers is to interfere with Allen Group's business and prospective business relationships.

## Count I

### Account Stated
**(Against Nu Dell)**

30.     Allen Group incorporates and re-alleges the allegations in paragraphs 1-29 herein.

31.     Allen Group provided fiberglass products to Nu Dell on account, provided invoices to Nu Dell for the products provided, and made several demands for payment.

32.     Nu Dell owes Allen Group $1,506,854.62, not including interest, penalties, and all recoverable costs and attorney fees, as set forth in Allen Group's Statement of Account, attached at Exhibit A, and in Allen Group's Declaration of Account, attached at Exhibit B.

33.     Nu Dell has failed and/or refused to pay for the products provided under the account stated.

34.     As a direct and proximate result of Nu Dell's failure and/or refusal to pay the amount owed on their account, Allen Group has been damaged.

## Count II

## **Breach of Contract**
### (Against Nu Dell)

35.      Allen Group incorporates and re-alleges the allegations in paragraphs 1-34 herein.

36.      From March 2009 to April 2010, Nu Dell and Allen Group entered into an enforceable agreement for the purchase and sale of Allen Group fiberglass products.

37.      Under the agreement, Allen Group promised to manufacture and send to Nu Dell various fiberglass products based on purchase orders issued by Nu Dell.

38.      In exchange for Allen Group's promise to make and send fiberglass products to Nu Dell, Nu Dell promised to pay Allen Group the amount due and owing on invoices Allen Group sent to Nu Dell.

39.      From March 2009 to April 2010 Allen Group performed under the agreement and shipped products to Nu Dell, and Nu Dell received and accepted the products without objection.

40.      Nu Dell has breached the parties' agreement by failing to pay Allen Group for products Allen Group shipped to Nu Dell from March 2009 through April 2010, as summarized in the Statement of Account attached as Exhibit A.

41.      Allen Group has been damaged by Nu Dell's breach in the amounts listed in Exhibit A, which does not include interest, penalties, and other recoverable damages, costs, and fees to which Allen Group may be entitled.

**Count III**

**Breach of Contract by Violating the Covenant of Good Faith and Fair Dealing**
**(Against Block and Nu Dell)**

42.     Allen Group incorporates and re-alleges the allegations in paragraphs 1 -
41 herein.

43.     Included in every agreement within the State of Illinois is an implied
covenant of good faith and fair dealing.

44.     Thus, Nu Dell and Mr. Block, as the President and CEO of Nu Dell, owed
a duty to act in good faith and deal fairly with Allen Group, including, without limitation, the
requirement that neither Nu Dell nor Mr. Block make false or misleading statements to Allen
Group, that they not make false and misleading statements to Allen Group's business partners
and customers, that Nu Dell and Mr. Block honor their many promises to pay Allen Group, and
that they not participate in schemes and artifices to defraud Allen Group out of fiberglass
products without payment based on a series of false promises of payment.

45.     Nu Dell and Mr. Block breached their duties of good faith and fair
dealing to Allen Group by making false and misleading statements to Allen Group and its
business partners and customers, by making continuous false promises of payment to Allen
Group to induce Allen Group into providing products that neither Nu Dell nor Mr. Block were
going to pay for, among other misrepresentations and unlawful conduct set forth in this
Complaint.

46.     As a direct and proximate cause of Nu Dell and Mr. Block's violations of
their duties of good faith and fair dealing, Allen Group suffered damages.

**Count IV**

**Unjust Enrichment**
**(Against Nu Dell)**

47.     Allen Group incorporates and re-alleges the allegations in paragraphs 1-46 herein.

48.     From March 2009 to April 2010, Allen Group manufactured and sent to Nu Dell various fiberglass products as requested by Nu Dell.

49.     In exchange for Allen Group's promise to make and send fiberglass products to Nu Dell, Nu Dell promised to pay Allen Group the amount due and owing on invoices Allen Group sent to Nu Dell.

50.     From March 2009 to April 2010 Allen Group shipped products to Nu Dell, and Nu Dell received and accepted the products without objection.

51.     Nu Dell has failed to pay Allen Group for products Allen Group shipped to Nu Dell from March 2009 through April 2010, as summarized in the Statement of Account attached as Exhibit A.

52.     It would be unjust to permit Nu Dell to retain the benefits from the sale of Allen Group's products without paying Allen Group for those products.

53.     In order to remedy Nu Dell's unjust enrichment, the Court should compel Nu Dell to pay Allen Group the amounts listed in Exhibit A, in addition to interest, penalties, and other recoverable damages, costs, and fees to which Allen Group may be entitled.

**Count V**

**Fraudulent Misrepresentation**
**(Against Block)**

54.     Allen Group incorporates and re-alleges the allegations in paragraphs 1-53 herein.

55.     Mr. Block has made a series of false statements and material misrepresentations with the intention of inducing Allen Group to ship products to Nu Dell for sale by Nu Dell without paying Allen Group, and to induce Allen Group to believe that Nu Dell had adequate capital and personnel to perform sales and vendor duties for Allen Group, among other things.

56.     Mr. Block's false statements formed part of a scheme to misappropriate products from Allen Group to sell to retail customers to obtain money without paying Allen Group for the products.  Some of the misrepresentations made by Mr. Block as part of his scheme include:

a.  July 7, 2009 statement to Allen Group that "[w]e do not expect to receive any of our 10% commission until every penny that we owe you is paid," but eight months later Mr. Block told Marshall that Nu Dell's "business model" for paying Marshall relied on Allen Group paying the 10% commission despite Nu Dell not paying the money it owed Allen Group;

b.  July 14, 2009 statement that after Nu Dell receives a "major check next week" that Nu Dell "will be able to move through our current cash crunch" and make past due payments to Allen Group;

15

c. August 3, 2009 statement to Allen Group that Mr. Block and Nu Dell's CFO "watch each day's collection from customers down to the last penny," that Nu Dell will make payments to Allen Group "until the balance of our commitment to you is satisfied," and that "[s]ix months from now, I believe that [Allen Group] will be very glad that we all worked through this impossibly difficult time together. . . . [W]e will not make promises that we cannot keep;"

d. October 6, 2009 statement to Allen Group that the bank will "finalize my new loan this week" to pay Allen Group;

e. October 8, 2009 statement to Allen Group that Mr. Block will provide $100,000 to Allen Group to pay for a customer order, Nu Dell will then pay 70% of the purchase price of each order, and will pay the balance when the customer remits payment to Nu Dell;

f. October 31, 2009 statement to Allen Group that "[w]e are certain, **beyond a doubt**," that Nu Dell could pay 70% of all the customer orders shipped in Nu Dell's name;

g. March 23, 2010 statement to Allen Group that if Allen Group provided its commission schedule to Nu Dell, Nu Dell "will work out our payment schedule with you;"

h. March 24, 2010 statement to Allen Group that "[h]ere in the United States, we cannot usually create enforceable contracts without lawyers;"

i. March 27, 2010 statement to Marshall that Nu Dell's "business model" for paying Marshall relied on Allen Group paying a 10% commission to Nu

Dell even though Nu Dell owed Allen Group over $1.5 million, and despite Mr. Block's statement to Allen Group eight months earlier that neither Block nor Nu Dell "expect to receive any of our 10% commission until every penny to [Allen Group] is paid;"

    j.  May 19, 2010 statement "assur[ing]" customers that "the future of our relationship is on solid ground," even though Nu Dell had neither the capital nor the personnel to perform adequately as a sales representative or vendor;

    k.  May 19, 2010 statement to customers marketing the "Nu Dell method of doing business" and referring to Nu Dell's past troubles as "anomalies."

57.    Mr. Block knew these statements to be false, or made them made with reckless disregard of whether they were true or false.

58.    Mr. Block's false statements were made with the intent to induce Allen Group to continue forgiving Nu Dell's immediate satisfaction of its debt to Allen Group, to induce Allen Group to keep sending products to Nu Dell, and to induce Allen Group to keep using Nu Dell as its sales representative.

59.    Allen Group reasonably believed Mr. Block's representations and justifiably acted in reliance on those statements.

60.    As a direct and proximate result of Mr. Block's false statements, Allen Group has suffered damages.

**Count VI**

**Negligent Misrepresentation**
**(Against Block)**

61.     Allen Group incorporates and re-alleges the allegations in paragraphs 1-60 herein.

62.     Mr. Block has made a series of negligent statements and material misrepresentations with the intention of inducing Allen Group to ship products to Nu Dell for sale by Nu Dell without Nu Dell paying Allen Group, and to induce Allen Group to believe that Nu Dell had adequate capital and personnel to perform sales and vendor duties for Allen Group, among other things.

63.     Mr. Block's negligent statements formed part of a scheme to misappropriate products from Allen Group to sell to retail customers to obtain money without paying Allen Group for the products.  Some of the misrepresentations made by Mr. Block as part of his scheme include:

      a.  July 7, 2009 statement to Allen Group that "[w]e do not expect to receive any of our 10% commission until every penny that we owe you is paid," but eight months later Mr. Block told Marshall that Nu Dell's "business model" for paying Marshall relied on Allen Group paying the 10% commission despite Nu Dell not paying the money it owed Allen Group;

      b.  July 14, 2009 statement that after Nu Dell receives a "major check next week" that Nu Dell "will be able to move through our current cash crunch" and make past due payments to Allen Group;

c. August 3, 2009 statement to Allen Group that Mr. Block and Nu Dell's
CFO "watch each day's collection from customers down to the last
penny," that Nu Dell will make payments to Allen Group "until the
balance of our commitment to you is satisfied," and that "[s]ix months
from now, I believe that [Allen Group] will be very glad that we all
worked through this impossibly difficult time together. . . . [W]e will not
make promises that we cannot keep;"

d. October 6, 2009 statement to Allen Group that the bank will "finalize my
new loan this week" to pay Allen Group;

e. October 8, 2009 statement to Allen Group that Mr. Block will provide
$100,000 to Allen Group to pay for a customer order, Nu Dell will then
pay 70% of the purchase price of each order, and will pay the balance
when the customer remits payment to Nu Dell;

f. October 31, 2009 statement to Allen Group that "[w]e are certain, **beyond
a doubt**," that Nu Dell could pay 70% of all the customer orders shipped
in Nu Dell's name;

g. March 23, 2010 statement to Allen Group that if Allen Group provided its
commission schedule to Nu Dell, Nu Dell "will work out our payment
schedule with you;"

h. March 24, 2010 statement to Allen Group that "[h]ere in the United States,
we cannot usually create enforceable contracts without lawyers;"

i. March 27, 2010 statement to Marshall that Nu Dell's "business model" for
paying Marshall relied on Allen Group paying a 10% commission to Nu

19

Dell even though Nu Dell owed Allen Group over $1.5 million, and despite Mr. Block's statement to Allen Group eight months earlier that neither Block nor Nu Dell "expect to receive any of our 10% commission until every penny to [Allen Group] is paid;"

j. May 19, 2010 statement "assur[ing]" customers that "the future of our relationship is on solid ground" even though Nu Dell had neither the capital nor the personnel to perform adequately as a sales representative or vendor;

k. May 19, 2010 statement to customers marketing the "Nu Dell method of doing business" and referring to Nu Dell's past troubles as "anomalies."

64. Mr. Block owed a duty to Allen Group to ensure that his statements to Allen Group and its business partners and customers were not careless or negligent, especially given the fiduciary duty Nu Dell had to Allen Group as a vendor for Allen Group.

65. Mr. Block was negligent in making these statements.

66. Mr. Block's negligent statements were made with the intent to induce Allen Group to continue forgiving Nu Dell's immediate satisfaction of its debt to Allen Group, to induce Allen Group to keep sending products to Nu Dell, and to induce Allen Group to keep using Nu Dell as its sales representative.

67. Allen Group reasonably believed Mr. Block's representations and justifiably acted in reliance on those statements.

68. As a direct and proximate result of Mr. Block's negligent statements, Allen Group has suffered damages.

20

## Count VII

## Conversion
**(Against Nu Dell and Block)**

69.     Allen Group incorporates and re-alleges the allegations in paragraphs 1-68 herein.

70.     From March 2009 to April 2010, Allen Group manufactured and sent to Nu Dell various fiberglass products as requested by Nu Dell.

71.     In exchange for Allen Group's promise to make and send fiberglass products to Nu Dell, Nu Dell promised to pay Allen Group the amount due and owing on invoices Allen Group sent to Nu Dell.

72.     As discussed more fully in the Background allegations in this Complaint, throughout 2009 and the first part of 2010 Mr. Block made numerous promises and representations to Allen Group upon which Allen Group relied in shipping products to Nu Dell. Mr. Block represented that his personal resources and reputation were behind his promises to Allen Group that Nu Dell would pay Allen Group for the products Allen Group sent to Nu Dell.

73.     Throughout 2009 and the first part of 2010, Mr. Block continually provided personal assurances and promises that Nu Dell would make payments on the invoices representing products shipped to Nu Dell but for which Nu Dell had failed to pay.  Mr. Block continually breached his many promises of payment to Allen Group, but retained and accepted the products shipped by Allen Group without payment.

74.     Mr. Block has represented to Allen Group that his bank has used payments from retail customers that belonged to Allen Group to pay other creditors of Nu Dell and/or Mr.

Block and/or Mr. Block's other businesses. Mr. Block refused to provide contact information for his banker to discuss why payments have not been made.

75. Mr. Block indicated that Nu Dell was inadequately capitalized, was potentially insolvent, had diverted funds and assets belonging to Allen Group to other creditors, and upon information and belief Mr. Block failed to observe other corporate formalities, and he may have commingled the funds and assets of Nu Dell with other corporate and personal interests

76. From March 2009 to April 2010, Allen Group shipped products to Nu Dell based on Mr. Block's promises and representations of payment, and Nu Dell received and accepted the products without objection.

77. Allen Group had a right to payment by Nu Dell for the amounts listed on the invoices Allen Group sent to Nu Dell, as summarized in the Statement of Account attached as Exhibit A.

78. Allen Group made repeated demands to Mr. Block and Nu Dell for payment on these invoices.

79. Mr. Block and Nu Dell have wrongfully and without authorization assumed control, dominion, and ownership over the monies owed for products Allen Group shipped to Nu Dell from March 2009 through April 2010, as summarized in the Statement of Account attached as Exhibit A.

80. The Court should compel Nu Dell and Mr. Block to pay Allen Group the amounts listed in Exhibit A which have been unlawfully converted, in addition to interest and other recoverable damages, penalties, costs, and fees to which Allen Group may be entitled.

## Count VIII

### Tortious Interference with Prospective Economic Advantage
### (Against Block)

81.     Allen Group incorporates and re-alleges the allegations in paragraphs 1-80 herein.

82.     Allen Group has valid business relationships with its retail customers to whom Allen Group sells Allen Group products.

83.     Mr. Block is aware of Allen Group's business relationships and expectancies with Allen Group's retail customers.

84.     Mr. Block has intentionally interfered with Allen Group's business relationships and expectances with Allen Group's retail customers by making various false statements about Nu Dell's dispute with Allen Group, about Nu Dell's ability to perform sales and vendor duties for retail customers, and by making threats to Allen Group sales personnel.

85.     Mr. Block and Nu Dell have intentionally interfered with Allen Group's business relationships with its customers by not providing payments and capital to ensure Allen Group obtains orders from retail customers, by sending inferior personnel to meetings with retail customers, by threatening to make additional false statements to retail customers, by making threats to Allen Group sales personnel, and by severely hindering Allen Group' cash flow.

86.     Mr. Block's conduct has disrupted and threatened to disrupt Allen Group's business with Allen Group's retail customers, has severely hindered Allen Group's cash flow, and has caused Allen Group to expend resources in the form of capital and personnel time to respond to Nu Dell's false statements and deficient services

**Count IX**

**<u>Unfair Competition</u>**
**(Against Nu Dell and Block)**

87.      Allen Group incorporates and re-alleges the allegations in paragraphs 1-86 herein.

88.      Mr. Block and Nu Dell have engaged in unfair competition with Allen Group by, among other things, representing that their vendor and sales representative services have benefits and characteristics that they do not have; by misrepresenting the quality of Nu Dell's services; by disparaging the services and business practices of Allen Group by making false or misleading statements to Allen Group's customers and prospective customers, in addition to other conduct outlined in this Complaint that are actionable as unfair trade practices in Illinois.

89.      The actions and material misstatements by Nu Dell and Mr. Block violate standards of reasonable commercial conduct and morality.

90.      The conduct of Mr. Block and Nu Dell have disrupted and threatened to disrupt Allen Group's business with Allen Group's retail customers, and has caused Allen Group to incur damages, including but not limited to expending resources in the form of capital and personnel time to respond to Nu Dell's false statements, severely hindering Allen Group's cash flow to subsidize Nu Dell's $1.5 million debt to Allen Group, among other damages caused by Nu Dell's unfair competitive conduct.

**Count X**

**Uniform Deceptive Trade Practices Act**
**(Against Nu Dell and Block)**

91.     Allen Group incorporates and re-alleges the allegations in paragraphs 1-90 herein.

92.     Mr. Block and Nu Dell have violated the Uniform Trade Practices Act by, among other things, representing that their vendor and sales representative services have benefits and characteristics that they do not have; by misrepresenting the quality of Nu Dell's services; by disparaging the services and business practices of Allen Group by making false or misleading statements to Marshall and Allen Group's customers and prospective customers, in addition to other conduct actionable under the Uniform Trade Practices Act.

93.     Mr. Block and Nu-Dell willfully engaged in the deceptive trade practices above.

94.     As a result of the deceptive trade practices of Mr. Block and Nu Dell, Allen Group will suffer damage to its business relationships with its clients and business partners, and its very important reputation in the industry.

95.     Allen Group is entitled to an injunction against Nu Dell and Mr. Block under the Uniform Deceptive Trade Practices Act enjoining Nu Dell and Mr. Block from contacting or meeting with any business partners, customers, or prospective customers of Allen Group.  Nu Dell has neither the capital nor the personnel to conduct business with Allen Group's customers and prospective customers.  So the only reason for Nu Dell or Mr. Block to meet with Allen Group's business partners and customers is to interfere with Allen Group's business and prospective business relationships.

96. Because Mr. Block and Nu Dell have willfully engaged in the deceptive trade practices outlined above, Allen Group is entitled to its costs and attorney fees under the Uniform Deceptive Trade Practices Act for having to bring this action.

## Count XI

### Breach of Fiduciary Duty
**(Against Nu Dell and Block)**

97. Allen Group incorporates and re-alleges the allegations in paragraphs 1-96 herein.

98. Defendants had both legal and equitable fiduciary duties to Allen Group.

99. Defendants were formal legal fiduciaries to Allen Group because Nu Dell was Allen Group's agent by and through Nu Dell's sale of Allen Group products to retail customers, accepting payment for those products from those retail customers, and undertaking to remit payment for those products to Allen Group.

100. Defendants were also equitable fiduciaries to Allen Group because of the trust reposed by Allen Group in defendants to work hard to not only sell Allen Group's products to retail customers, but also to remit payment to Allen Group for the products Allen Group shipped to defendants.

101. As fiduciaries, defendants owed duties to Allen Group to act in Allen Group's best interest, and to treat Allen Group with the utmost candor, rectitude, care, loyalty, and good faith.

102. Defendants breached their fiduciary duties by, among other things, converting over $1.5 million from Allen Group, and making material misrepresentations to Allen Group and its business partners, customers, and prospective customers.

103.    As a direct and proximate result of defendants' various breaches of fiduciary duties, Allen Group has suffered monetary and equitable damage.

## Count XII

### Accounting
### (Against Nu Dell and Block)

104.    Allen Group incorporates and re-alleges the allegations in paragraphs 1-103 herein.

105.    Nu Dell and Mr. Block breached various legal and equitable fiduciary duties to Allen Group.  Therefore, Allen Group is entitled to a full accounting of defendants' financial and corporate records in order to determine the amount and location of assets wrongfully converted from Allen Group by defendants.

106.    Allen Group has no adequate remedy at law.  Defendants converted over $1.5 million from Allen Group through a scheme of material misrepresentations and omissions. Defendants' conduct has damaged Allen Group's cash flow.  Absent a full accounting of the assets, books, and records of Nu Dell, Mr. Block, and Mr. Block's related companies, the potential insolvency of Nu Dell and Mr. Block threatens the ability of defendants to pay Allen Group for the significant debts defendants have admitted that they owe.  Federal courts in this district and division recognize this as irreparable harm for which legal remedies are inadequate.

107.    Moreover, a full accounting of Nu Dell and Mr. Block will remedy the danger that Mr. Block hides and diverts assets to his various other business and real estate interests, or continues to allow Nu Dell's other creditors to take assets that rightfully belong to Allen Group simply because money owed to Allen Group flows through a Nu Dell bank account with liens from other Nu Dell creditors.

108.    Wherefore, the Court should enter an order permitting Allen Group to select a forensic accountant to conduct a full accounting of the books and records of Nu Dell, Mr. Block, and Mr. Block's conglomerate of companies.

## Count XIII

### Preliminary and Permanent Injunctive Relief
### (Against Nu Dell and Block)

109.    Allen Group incorporates and re-alleges the allegations in paragraphs 1-108 herein.

110.    Allen Group is entitled to an order from this Court:

a.    Enjoining Mr. Block and Nu Dell from transferring, diverting, or otherwise disposing of any financial or other assets in the amount of $1,506,854.62 given Nu Dell and Mr. Block's potential insolvency and lack of adequate capitalization

b.    Creating a constructive trust over the assets of Nu Dell and Mr. Block in the amount of $1,506,854.62, making Mr. Block and Nu Dell constructive trustees over this amount, with a corresponding order that the constructive trustees transfer title and possession of the wrongfully acquired property and assets to Allen Group, to be held in an interest bearing escrow account until final disposition of this action

c.    Enjoining Mr. Block and Nu Dell from contacting or meeting with any customers or prospective customers of Allen Group

      d.   Enjoining Mr. Block and Nu Dell from contacting or meeting with any of Allen Group's business partners, including vendors and sales representatives employed by or associated with Allen Group

      e.   declaring that the commercial relationship between Nu Dell and Allen Group is extinguished as of the date of the last Allen Group shipment to Nu Dell

111.    Allen Group is entitled to this injunctive relief because Allen Group: 1) has no adequate remedy at law; 2) will suffer irreparable harm if the injunction is denied; 3) the balance of the harms of an injunction favor Allen Group; 4) Allen Group has a reasonable likelihood of success on the merits of its claims; and 5) issuance of the injunction above will not disserve the public interest.

112.    Allen Group does not have an adequate remedy at law for the irreparable harm that has been caused and will be caused by defendants absent an injunction. Defendants converted over $1.5 million from Allen Group through a scheme of material misrepresentations and omissions. Nu Dell has neither the capital nor the personnel to perform a sales function at a high level. Defendants' conduct has damaged Allen Group's cash flow. Absent an injunction creating a constructive trust over the assets of Mr. Block and Nu Dell up to an amount of $1,506,854.62, the potential insolvency of Nu Dell and Mr. Block threatens the ability of defendants to pay Allen Group for the significant debts defendants have admitted that they owe. Federal courts in this district and division recognize this as irreparable harm.

113.    Moreover, creating a constructive trust over the assets of Nu Dell and Mr. Block up to $1,494,854.62 will remedy the danger that Mr. Block hides and diverts assets to his various other business and real estate interests, or continues to allow Nu Dell's other creditors to

take assets that rightfully belong to Allen Group simply because money owed to Allen Group flows through a Nu Dell bank account with liens from other Nu Dell creditors. It is neither fair nor equitable for Allen Group to continue to subsidize Nu Dell's debts to its other creditors instead of those assets justifiably being used to pay down Nu Dell's $1.5 million debt to Allen Group that has accrued over the last year as a result of fraud and deceit.

114.    Defendants' conduct also threatens the valuable reputation of Allen Group and its vendors and sales representatives in the industry. Defendants are threatening to interfere with Allen Group's current and prospective customers by making false and misleading statements about Nu Dell's abilities and its business.

115.    In addition, defendants have made material misrepresentations to Allen Group's vendors about Allen Group and the dispute between Allen Group and Nu Dell. For example, in one instance, Mr. Block informed Marshall that Nu Dell was not paying Marshall because Allen Group owed Nu Dell money. In fact, the opposite was true. Nu Dell owed Allen Group money, significant sums of money.

116.    Nu Dell and Mr. Block have established that they will do anything to try and keep customers paying Nu Dell, regardless of the veracity of their promises or their ability to perform them, and regardless of their effect on Allen Group's cash flow and reputation. Defendants are threatening to interfere with Allen Group's customers and prospective customers, which may hinder or prevent Allen Group's ability to continue selling products to these valuable customers.

117.    Allen Group has no adequate remedy at law for defendants' unlawful conduct because defendants are threatening to interfere with Allen Group's ability to sell products to retail customers and get paid for it — defendants are threatening to destroy Allen

Group's fiberglass sales to its retail customers, which are significant. It is impossible to calculate the money damages from defendants' damage to Allen Group's business reputation, and thus an injunction is appropriate.

118. The balance of harms from an injunction favors Allen Group. Nu Dell has neither the capital nor the personnel to conduct business with Allen Group's customers and prospective customers. So the only reason for Nu Dell or Mr. Block to meet with these customers is to interfere with Allen Group's business and prospective business relationships. An injunction prohibiting this will not harm Nu Dell because Nu Dell has neither the capitalization nor the personnel to successfully operate with or against Allen Group. So the injunction will prohibit Nu Dell from making material misrepresentations that may cost Allen Group customers and prospective customers.

119. Allen Group has a reasonable likelihood of success on its underlying claims against Nu Dell and Mr. Block. Indeed, Mr. Block has admitted the debt owed to Allen Group. So it is only fair that the Court compel Nu Dell and Mr. Block to set aside $1.5 million to secure payment of the debt that Mr. Block and Nu Dell long ago admitted.

120. Finally, it is in the public interest to enter the injunction against defendants. It is good public policy not to condone fraudulent schemes like the one employed by Nu Dell and Mr. Block to unlawfully convert over $1.5 million. It is good public policy to compel fiduciaries like Nu Dell and Mr. Block to return assets wrongfully converted from their principal. It is good public policy to compel commercial parties to honor debts that they have admitted for over a year that they owe, but have not yet paid. It is good public policy to ensure that admitted debtors are not allowed to use funds and assets owed to a party to pay other creditors.

**RELIEF REQUESTED**

WHEREFORE, Allen Group makes the following claims for relief from this Honorable Court against Nu Dell and Mr. Block:

121.    That the Court enter a preliminary and permanent injunction with the following terms:

a.   Enjoining Mr. Block and Nu Dell from transferring, diverting, or otherwise disposing of any financial or other assets in the amount of $1,506,854.62 given Nu Dell and Mr. Block's potential insolvency and lack of adequate capitalization

b.   Creating a constructive trust over the assets of Nu Dell and Mr. Block in the amount of $1,506,854.62, making Mr. Block and Nu Dell constructive trustees over this amount, with a corresponding order that the constructive trustees transfer title and possession of the wrongfully acquired property and assets to Allen Group, to be held in an interest bearing escrow account until final disposition of this action

c.   Enjoining Mr. Block and Nu Dell from contacting or meeting with any customers or prospective customers of Allen Group

    d.   Enjoining Mr. Block and Nu Dell from contacting or meeting with any of Allen Group's business partners, including vendors and sales representatives employed by or associated with Allen Group

    e.   declaring that the commercial relationship between Nu Dell and Allen Group is extinguished as of the date of the last Allen Group shipment to Nu Dell

122.    That the Court enter an award of damages against Nu Dell and Mr. Block for the following categories and amounts:

    a.   An award of $1,506,854.62, including applicable penalties and interest, as reflected in the Statement of Account attached at Exhibit A

    b.   An award of Allen Group's costs and attorney fees incurred in bringing this action, in accord with section 3 of the Uniform Deceptive Trade Practices Act, for defendants' willfully deceptive trade practices

    c.   An award of incidental and consequential damages flowing from Nu Dell's various unlawful conduct and breaches of fiduciary and contractual duties

    d.   An award of exemplary and punitive damages to punish Nu Dell for the particularly reprehensible commercial conduct exhibited in its

dealings with Allen Group, and to deter future conduct of this sort by

Nu Dell and Mr. Block

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By:  s/ Kathleen E. Koppenhoefer
        Kathleen E. Koppenhoefer
        225 W. Washington, Suite 2600
        Chicago, Illinois 60606
        (312) 460-4200
        koppenhoefer@millercanfield.com

        Matthew P. Allen (Michigan Bar No. P57914)
        840 West Long Lake Road, Suite 200
        Troy, MI  48098-6358
        (248) 879-2000
        allen@millercanfield.com

Date:  June 4, 2010        Attorneys for Plaintiff Allen Group

18,021,330.3\144760-00001